IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

NICHOLAS D. ABALOS, et al.,,

                Plaintiffs,                Case No. 3:11 CV 00122

-vs-                                    <u>AMENDED</u>
                                                     <u>MEMORANDUM OPINION</u>

JEREMY C. CAREY, et al.,

                Defendants.

KATZ, J.

Plaintiffs Nicholas Abalos and Gustave LaRoy brought this 42 U.S.C. § 1983 action against several municipalities, law enforcement agencies, and law enforcement officials following a physical altercation with police that led to Plaintiffs' arrest and prosecution. What remains after voluntary dismissal of numerous claims and Defendants are causes of action for false arrest, excessive force, malicious prosecution, and municipal liability. Defendants now move for summary judgment and qualified immunity on all claims. For the reasons stated herein, Defendants' motion is granted in part and denied in part.

**I. Background**

On January 24-25, 2009, Plaintiffs Nicholas Abalos ("Nicholas"), Gustave LaRoy ("LaRoy"), and five other individuals were part of a bachelor party for Nicholas's older brother, David Abalos ("David"). The party consisted of the group traveling in a van with a hired driver to various locations for dinner and drinks. Sometime after midnight the group arrived at Scarlett's, a strip club in Toledo[1]

---

[1] In addition to Nicholas, LaRoy, and David, the party included Arturo Martinez, Mark Stroud, Andres Abalos, Raymond Stroud, and Aaron Frankhouse. The hired driver of the van was Brian Pearsall.

Also at Scarlett's that night were Defendants Jeremy Carey and Kenneth DeWitt–two members of the Toledo Police Vice Narcotics unit–who were there to work on an undercover gambling assignment. The parties agree that at some point, David, the bachelor, got onto the stage and danced in front of the club at the behest of the strippers.

At this point in the factual narrative, the parties' briefs cease to provide a full and clear picture of what happened, not only because of factual disagreements but because while one party focuses on a certain period of time or certain facts, the other party makes virtually no reference to the same time period or facts, and visa-versa. Despite the somewhat disjointed picture, there are sufficient facts before the Court to resolve the instant motion.

Plaintiffs claim that Carey and DeWitt shouted profanities at David while he was dancing on stage. Plaintiffs also claim Carey and DeWitt were drinking at Scarlett's, though Carey and DeWitt say they only gave the appearance of drinking to maintain their cover. At some point after David left the stage, Carey and DeWitt exited the club and ended up in the parking lot. As it happened, Nicholas, David, and four other members of the party found themselves in the parking lot at the same time (LaRoy, the van driver, and one other party-goer had previously left and returned to the van).

Once in the parking lot, each group claims the other began hurling profanities. Eventually, the verbal altercation turned into a fight, with Plaintiffs admitting that David threw the first punch at Carey. Plaintiffs claim, however, that David did so in defense of Nicholas, asserting that Carey pulled his gun and put it to Nicholas's head without ever identifying himself or DeWitt as police officers. Defendants admit that Carey "brought out his weapon," though Defendants do not fully explain how the weapon was used. Defendants do maintain, however, that Carey brought out the

weapon only after he and DeWitt displayed their badges. Further, Carey and DeWitt claim that David and another party-goer tried to take Carey's gun during the fight, and when Carey tried to retreat, Nicholas attacked him. Plaintiffs claim Nicholas threw no punches and did not attack anyone. Plaintiffs also claim LaRoy–who had earlier returned to the van–remained in the van and was not involved in the fight. Carey and DeWitt conversely testified that LaRoy was among their alleged assailants in the parking lot.

As to the conclusion of the fight, Defendants claim the party-goers fled the scene after beating-up two people who identified themselves as police officers. Conversely, Plaintiffs claim Nicholas was able to break-up the two groups after a very brief scuffle, and further claim the party-goers nervously got in the van to return to their hotel, not knowing who had just pulled a gun on them.[2]

As the van left, DeWitt called 911 on a cell phone and informed the dispatcher that he and Carey had been assaulted and were in need of assistance. Carey and DeWitt then got in their unmarked car and followed Plaintiffs' van. A short time later, Washington Township police officer Paul Brady responded to DeWitt's 911 call and pulled the van over. Officer Brady testified that the van did not commit any traffic violations, and the only reason for the traffic stop was DeWitt's 911 call. Upon effectuating the stop, Officer Brady proceeded to the driver's side and ordered the driver to exit the vehicle. Brady testified that the driver complied and did not offer any resistence.

---

[2] The events in the Scarlett's parking lot were captured on surveillance video, Ex. B to Pl's. Reply, Doc. 129-5, but the quality of the video makes it difficult to discern the events depicted.

Soon thereafter–the precise timing is unclear–Carey and DeWitt's car arrived on scene along with several other police cars. The officers all approached the van and ordered the occupants out of the vehicle. According to Defendants, the occupants all heard the orders but refused to comply, opting instead to stare at the officers with the van doors shut. Defendants say one of the officers then broke out a window, the doors were opened, and the officers began removing the non-compliant occupants, including Plaintiffs Nicholas and LaRoy. Conversely, Plaintiffs claim that all occupants complied with all orders. Specifically, Nicholas claims he immediately opened the door, but says Carey began punching him when he did so. Moreover, Nicholas claims Carey grabbed him and threw him to the ground, and further claims that he was punched after he was handcuffed. David also claims he saw Nicholas punched by Carey, DeWitt, and Defendant Toledo Police Officer Robert Orwig, who was one of the officers at the scene. Orwig admitted to using "an open hand stun technique" on the back of Nicholas's head, but claims he did so because Nicholas disregarded his commands to put his hands behind his back. Defendants also admit that Plaintiffs had to be removed from the van due to their non-compliance, but Defendants otherwise reject Plaintiffs' characterization of the use of force.

Eventually, all eight party-goers were arrested, and each faced nine charges: three counts of aggravated robbery, two counts of robbery, two counts of felonious assault, and two counts assault. LaRoy eventually had eight of the charges dropped, and was found not guilty on the remaining count of felonious assault. Nicholas was also found not guilty on all charges. The only conviction out of all the charges was against David, who was convicted on a single count of misdemeanor assault for punching Carey in the Scarlett's parking lot.

Plaintiffs subsequently brought this action, asserting numerous Section 1983 claims against numerous municipalities, law enforcement agencies, and law enforcement officials. Several claims and Defendants were dismissed throughout litigation, and Plaintiffs further narrowed claims and Defendants in their opposition to the instant motion. What remains is as follows:

> (1) False Arrest: brought by Nicholas and LaRoy against Carey, DeWitt, and Defendant Toledo Police Officers Sherri Wise, John Mattimore, and Rick Molnar;
>
> (2) Excessive Force: brought by Nicholas, only, against Carey, DeWitt, and Orwig;
>
> (3) Malicious Prosecution: brought by Nicholas and LaRoy against Carey, DeWitt, Wise, Mattimore, and Molnar;
>
> (4) Municipal Liability: brought by Nicholas and LaRoy against Defendant City of Toledo.

*See* Def's. Opp. Brief, Doc. 126 at 1-2 (hereinafter, "Def's. Opp."). Defendants now move for summary judgment and qualified immunity.

## II. Legal Standards

### A. Summary Judgment

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The moving party bears the initial responsibility of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*

5

*Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986). The movant may meet this burden by demonstrating the absence of evidence supporting one or more essential elements of the non-movant's claim. *Id.* at 323-25. Once the movant meets this burden, the opposing party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 2541, 91 L. Ed. 2d 202 (1986) (*quoting* FED. R. CIV. P. 56(e)).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986). Rather, Rule 56(e) "requires the nonmoving party to go beyond the pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324, 106 S. Ct. at 2553; *see also Harris v. General Motors Corp.*, 201 F.3d 800, 802 (6th Cir. 2000). Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, 106 S. Ct. at 2552.

"In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences therefrom in a light most favorable to the nonmoving party." *Williams v. Belknap*, 154 F. Supp. 2d 1069, 1071 (E.D. Mich. 2001) (citing *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987)). However, "'at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter,'"

*Wiley v. U.S.*, 20 F.3d 222, 227 (6th Cir. 1994) (quoting *Anderson*, 477 U.S. at 249); therefore, "[t]he Court is not required or permitted . . . to judge the evidence or make findings of fact." *Williams*, 154 F. Supp. 2d at 1071. The purpose of summary judgment "is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried." *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 130 F. Supp. 2d 928, 930 (S.D. Ohio 1999). Ultimately, this Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52; *see also Atchley v. RK Co.*, 224 F.3d 537, 539 (6th Cir. 2000).

**B. Qualified Immunity**

The federal doctrine of qualified immunity provides that government officials performing discretionary functions are immune from suit unless the plaintiff shows that the official violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also Champion*, 380 F.3d at 900. Determining whether Defendants are entitled to qualified immunity involves a two-step inquiry. *See Scott v. Haris*, 550 U.S. 372, 277 (2007); *Hudson v. Hudson*, 475 F.3d 741, 745 (6th Cir. 2007). First, the Court examines whether the facts show that a constitutional violation occurred. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Second, if a constitutional violation is found, the Court examines whether the constitutional right was clearly established such that an objectively reasonable official would have known his or her conduct violated the right. *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004). Importantly, qualified immunity is a question of law. *Champion*, 380 F.3d at 900. "[I]f there is a disagreement as to the facts, the reviewing court must consider the evidence in the light most favorable to the Plaintiff." *Landis v. Baker*, 297 Fed. App'x. 453, 2008

7

U.S. App. Lexis 21945, at \*\*18 (6th Cir. Oct. 16, 2008) (citing *Champion*, 380 F.3d at 900).

Further, "[i]f the legal question is dependent upon which version of facts one believes, then the jury must determine liability." *Landis*, 2008 U.S. App. LEXIS 21945, at \*\*17. Finally, "[t]he plaintiff has the burden to 'show that the defendant is not entitled' to qualified immunity." *Untalan v. City of Lorain*, 430 F.3d 312, 314 (6th Cir. 2005) (quoting *Blake v. Wright*, 179 F.3d 1003, 1007 (6th Cir. 1999)).

## III. Discussion

### A. False Arrest and Imprisonment

Plaintiffs make a false arrest and imprisonment claim against Carey, DeWitt, Wise, Mattimore, and Molnar. *See Logsdon v. Hains*, 492 F.3d 334, 340-41 (6th Cir. 2007) (improper arrest and detention prohibited by *Fourth Amendment*'s search and seizure clause). The Sixth Circuit explained the applicable law in *Logsdon*:

> "[A] warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed," *Devenpeck v. Alford*, 543 U.S. 146, 152, 125 S. Ct. 588, 160 L. Ed. 2d 537 (2004), and the "validity of the arrest does not depend on whether the suspect actually committed a crime." *Michigan v. DeFillippo*, 443 U.S. 31, 36, 99 S. Ct. 2627, 61 L. Ed. 2d 343 (1979). Accordingly, "[i]n order for a wrongful arrest claim to succeed under § 1983, a plaintiff must prove that the police lacked probable cause." *Fridley v. Horrighs*, 291 F.3d 867, 872 (6th Cir. 2002) (citing *Painter v. Robertson*, 185 F.3d 557, 569 (6th Cir. 1999)).
>
> Probable cause exists if the facts and circumstances known to the officer warrant a prudent man in believing that the offense has been committed. *Henry v. United States*, 361 U.S. 98, 102, 80 S. Ct. 168, 4 L. Ed. 2d 134 (1959); *see also Beck v. Ohio*, 379 U.S. 89, 91, 85 S. Ct. 223, 13 L. Ed. 2d 142 (1964); *Illinois v. Gates*, 462 U.S. 213, 238, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983). The inquiry "depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest," *Devenpeck*, 543 U.S. at 152, where supported by "reasonably trustworthy information." *Beck*, 379 U.S. at 91. No overly-burdensome duty to investigate applies to officers faced with the prospect of a warrantless arrest. In initially formulating probable cause, they need not "investigate independently every

> claim of innocence." *Gardenhire v. Schubert*, 205 F.3d 303, 318 (6th Cir. 2000). And after the officer determines, on the basis of the facts and circumstances known to him, that probable cause exists, the officer has no further duty to investigate or to search for exculpatory evidence. *Ahlers v. Schebil*, 188 F.3d 365, 371 (6th Cir. 1999); *Criss v. City of Kent*, 867 F.2d 259, 263 (6th Cir. 1988). . . . "In general, the existence of probable cause in a § 1983 action presents a jury question, unless there is only one reasonable determination possible." *Fridley*, 291 F.3d at 872 (quotation marks omitted).

*Logsdon* 492 F.3d at 341.

At the outset, the Court notes that while Plaintiffs' statement of remaining claims as contained in their opposition brief includes a rote assertion of false arrest against Wise, Mattimore, and Molnar, Plaintiffs' brief makes no argument in support. Accordingly, Wise, Mattimore, and Molnar's motion for summary judgment is granted as to Plaintiffs' false arrest claim.

Turning to an analysis of Plaintiffs' false arrest claim against Carey and DeWitt, the Court finds there are sufficient factual disputes to deny qualified immunity and defeat summary judgment. As to the events in Scarlett's parking lot, Defendants testified Nicholas was throwing punches and attacking Carey when Carey tried to keep his weapon from being taken by the party-goers, all after Carey and DeWitt identified themselves as police officers. Yet, Nicholas and David both testified that Nicholas did not throw any punches, but instead broke-up the fight after a brief scuffle. Similarly, Plaintiffs maintain that LaRoy remained in the van and was not involved in the fight, while Defendants claim LaRoy attacked Carey and DeWitt in the parking lot. Thus, there is a factual dispute as to whether the events at Scarlett's created probable cause for Carey and DeWitt to arrest Nicholas and LaRoy.

There is likewise a factual dispute as to whether events during the subsequent traffic stop created probable cause. Officer Brady–who pulled the van over–testified that the van did not

commit any traffic violations, and the only reason for pulling it over was DeWitt's 911 call. Once stopped, the van driver complied with Brady's order to exit the vehicle and did not offer any resistance. Carey, DeWitt, and the other officers claim, however, that the other eight party-goers refused to comply with orders to exit, and further refused to comply with orders once out of the van. Conversely, testimony offered by Plaintiffs indicates that they were immediately compliant with all orders. Given these factual disputes, neither summary judgment nor an application of qualified immunity is appropriate.

Notably, both parties' briefs make much of the underlying criminal trial. Yet, none of the briefs offer any argument or legal authority demonstrating how this Court may apply the trial to the instant motion. Defendants repeatedly suggest that the Court "may take judicial notice" of various aspects of the trial, but offer no authority for doing so and do not explain any supposed impact on the instant proceedings. Defendants especially focus on the criminal trial judge's decision–affirmed by the appellate court–*not* to grant David's request for a "defense of others" jury instruction, which would derive from the theory that Carey held a gun to Nicholas's head. The trial and appellate courts found the evidence did not support such an instruction, but Defendants effectively offer no argument or authority for their assertion that this Court is now precluded from entertaining that theory. Defendants offer, at best, a cursory reference to "judicial estoppel and/or judicial fact preclusion," Def's. Reply at 14, offering no explanation other than a passing citation to a case that analyzes collateral estoppel under the inapplicable law of Indiana. *Id.* (citing *RSC v. Ipsos, S.A.*, 56 Fed. Appx. 639, 644, 2003 U.S. App. LEXIS 313 (6th Cir. Jan. 8, 2003)). Such a reference does not provide a meaningful argument, nor does it provide Plaintiffs an opportunity to respond. In any event, the Court need not decide the preclusion matter to

10

dispose of the instant motion, as Defendants do not explain how summary judgment is the only outcome if the Court excludes Plaintiffs' gun-to-the-head theory. Rather, regardless of whether David was justified in throwing the first punch to defend his brother, Plaintiffs maintain via their testimony that Nicholas was not an aggressor and did not attack the officers, that LaRoy was not involved in the fight at all, and that both Plaintiffs immediately complied with all police commands at the scene of the arrest. The Court therefore cannot grant immunity or enter summary judgment for Carey or DeWitt.

**B. Excessive Force**

Nicholas asserts a claim for excessive force against Carey, DeWitt, and Orwig. "*All* claims that law enforcement officers have used excessive force–deadly or not–in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the *Fourth Amendment* and its 'reasonableness' standard." *Graham v. Connor*, 490 U.S. 386, 395 (1989); *see also Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 901 (2004). The *Fourth Amendment* 'reasonableness' standard "is an objective one, which should disregard the underlying intent or motivation of the defendant." *Russo v. City of Cincinnati*, 953 F.2d 1036, 1044 (6th Cir. 1992) (citing *Graham*, 490 U.S. at 397). Moreover, the Supreme Court has cautioned that "[t]he 'reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 visioin of hindsight . . . . [P]olice officers are often forced to make split-second judgments–in circumstnaces that are tense, uncertain, and rapidly evolving–about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396-97 (internal citations omitted). Further, "[b]ecause [the 'reasonableness' standard] 'is not capable of precise definition or mechanical application,' its proper application requires careful

11

attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396 (citing *Tennessee v. Garner*, 471 U.S. 1, 8-9 (1985); *Bell v. Wolfish*, 441 U.S. 520, 535-39 (1979)).

Neither Plaintiffs' complaint, nor their brief, make any claim for excessive force as a result of the events in Scarlett's parking lot. Instead, Nicholas only claims excessive force for the alleged beating he received at the scene of the arrest. As explained above, Nicholas testified that as soon as he opened the van door, Carey began punching him and threw him to the ground. Nicholas also testified that someone drove a knee into his back, slammed his head into the ground, and hit him after he was handcuffed. David testified that he saw Nicholas taking closed-fist hits to his face, back, and side, and identified Carey, DeWitt, and Orwig as the individuals who hit Nicholas. Orwig admitted to using "an open hand stun technique" on the back of Nicholas's head, but claims he did so because Nicholas disregarded his commands to put his hands behind his back. Defendants also admit that Plaintiffs had to be removed from the van due to their non-compliance, but otherwise reject Plaintiffs' characterization of the use of force. Given these factual disputes, the Court can neither grant qualified immunity nor enter summary judgment.

Defendants argue that the Court should disregard David's excessive force testimony on grounds that it is not credible. Citing the Sixth Circuit's *Adams v. Metiva* decision, Defendants point out that courts may make "an inquiry on summary judgment into the 'implausibility' of inferences from circumstantial evidence . . . ." *Adams*, 31 F.3d 375, 383 (6th Cir. 1994) (quoting *McLaughlin v. Liu*, 849 F.2d 1205, 1207 (9th Cir. 1988)). But David's testimony is direct

12

evidence, not circumstantial evidence. Indeed, the statement in *Adams* continued on: courts may make "an inquiry on summary judgment into the 'implausibility' of inferences from circumstantial evidence, . . . not an inquiry into the credibility of direct evidence." *Id*.

Defendants' attempt to exclude David's testimony is not salvaged by the Southern District of Ohio's statement that "[t]he Court is under no duty to simply and unquestioningly accept Plaintiff's testimony as true . . . ." *Black v. City of Blue Ash*, 2010 U.S. Dist. LEXIS 25155, at *10-*11 (S.D. Ohio Mar. 17, 2010). The inapplicability of this statement to the instant matter is made clear by the rest of *Blue Ash*'s reasoning: "Plaintiff has expanded the concept that the Court must not engage in a credibility analysis of direct evidence at the summary judgement stage, which is what *Adams* stands for, into a blanket standard whereby the Court must accept everything Plaintiff says as true . . . . The Court declines to engage in such an expansion . . . ." Similarly, this Court cannot expand the rule allowing for a credibility determination of circumstantial evidence into a rule precluding direct evidence that Plaintiffs offer on rebuttal. Thus, qualified immunity and summary judgment remain inappropriate for Plaintiffs' excessive force claim against Carey, DeWitt, and Orwig.

**C. Malicious Prosecution**

Nicholas and LaRoy assert a claim for malicious prosecution against Carey, DeWitt, Wise, Mattimore, and Molnar.

> The Sixth Circuit "recognize[s] a separate constitutionally cognizable claim of malicious prosecution under the Fourth Amendment," which "encompasses wrongful investigation, prosecution, conviction, and incarceration." *Barnes v. Wright*, 449 F.3d 709, 715-16 (6th Cir. 2006) (internal quotation marks omitted). The "tort of malicious prosecution" is "entirely distinct" from that of false arrest, as the malicious-prosecution tort "remedies detention accompanied not by absence of legal process, but by wrongful institution of legal process." *Wallace v. Kato*, 549 U.S. 384,

13

> 390, 127 S. Ct. 1091, 166 L. Ed. 2d 973 (2007) (internal quotation marks omitted). . . .
>
> To succeed on a malicious-prosecution claim under § 1983 when the claim is premised on a violation of the Fourth Amendment, a plaintiff must prove the following: **First**, the plaintiff must show that a criminal prosecution was initiated against the plaintiff and that the defendant "ma[d]e, influence[d], or participate[d] in the decision to prosecute." *Fox v. DeSoto*, 489 F.3d 227, 237 (6th Cir. 2007); see also *McKinley v. City of Mansfield*, 404 F.3d 418, 444 (6th Cir. 2005); *Darrah v. City of Oak Park*, 255 F.3d 301, 312 (6th Cir. 2001); *Skousen v. Brighton High Sch.*, 305 F.3d 520, 529 (6th Cir. 2002). **Second**, because a § 1983 claim is premised on the violation of a constitutional right, the plaintiff must show that there was a lack of probable cause for the criminal prosecution, *Fox*, 489 F.3d at 237; *Voyticky*, 412 F.3d at 675. **Third**, the plaintiff must show that, "as a consequence of a legal proceeding," the plaintiff suffered a "deprivation of liberty," as understood in our Fourth Amendment jurisprudence, apart from the initial seizure. *Johnson v. Knorr*, 477 F.3d 75, 81 (3d Cir. 2007); *see Gregory v. City of Louisville*, 444 F.3d 725, 748-50 (6th Cir. 2006) (discussing the scope of "Fourth Amendment protections . . . beyond an initial seizure," including "continued detention without probable cause"); *cf. Heck v. Humphrey*, 512 U.S. 477, 484, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994) ("[U]nlike the related cause of action for false arrest or imprisonment, [an action for malicious prosecution] permits damages for confinement imposed pursuant to legal process."). **Fourth**, the criminal proceeding must have been resolved in the plaintiff's favor. *Heck*, 512 U.S. at 484 ("One element that must be alleged and proved in a malicious prosecution action is termination of the prior criminal proceeding in favor of the accused.").

*Sykes v. Anderson*, 625 F.3d 294, 308-09 (6th Cir. 2010) (footnote omitted) (emphasis added).

As with Plaintiffs' false arrest claim, Plaintiffs' brief does not offer an argument to support their malicious prosecution claim against Mattimore or Molnar. Therefore, qualified immunity is granted and summary judgment is entered in favor of Mattimore and Molnar on this claim. Additionally, Plaintiffs' brief only makes passing reference to Wise, without context or argument:

> [] Defendant Wise typed up an investigator's report, submitted warrants, and testified before the grand jury. Absent the police reports from Carey and DeWitt, there was no probable cause to charge the individuals in the van with any crime.

14

Pl's. Opp. at 15 (citations to Wise's report and deposition omitted). Plaintiff does not explain how this assertion satisfies the elements for malicious prosecution. Therefore, qualified immunity is granted and summary judgment entered for Wise on the malicious prosecution claim.

Turning to an analysis of Plaintiffs' malicious prosecution claim against Carey and DeWitt, the motion must be denied. Defendants' assertion that the Court must find the arrests supported by probable cause is unpersuasive for the reasons stated above. Also unpersuasive is Defendants' assertion that under *Sykes*, *supra*, an intervening indictment negates a claim for malicious prosecution absent–as Defendants put it–"evidence [that the grand jury] was improperly influenced." Def's. Reply at 22 (citing *Sykes*, 625 F.3d at 315). In fact, *Sykes* was much more specific, stating that an indictment breaks the chain of causation and negates a malicious prosecution absent "'an allegation of pressure or influence exerted by the [culpable] police officers, or knowing misstatements made by the officers to the prosecutor.'" *Sykes*, 625 F.3d at 316 (quoting *Reed v. City of Chicago*, 77 F.3d 1049, 1053 (7th Cir. 1996)). Here, Plaintiffs maintain that Carey and DeWitt fabricated their police reports and testified falsely such that their statements were relied on for preparation of warrants, for preparation of the investigator's report, and for grand jury testimony. Accordingly, the Court cannot grant qualified immunity or enter summary judgment.

**D. Municipal Liability**

Finally, Plaintiffs assert a *Monell*-based municipal liability claim against the City of Toledo, arguing that the City's failure to impose a policy regarding whether police officers may consume alcohol while carrying firearms caused the deprivation of Plaintiffs' constitutional rights. *See Monell v. New York City Dept. of Social Svcs.*, 436 U.S. 658, 691 (1978) (holding

municipalities liable under 42 U.S.C. § 1983 for policies or customs that violate constitutional rights). Plaintiffs' claim cannot succeed.

Plaintiffs correctly point out that "[t]here must be 'a direct causal link' between the policy and the alleged constitutional violation such that the [municipality's] 'deliberate conduct' can be deemed the 'moving force' behind the violation." *Graham v. County of Washtenaw*, 358 F.3d 377, 383 (6th Cir. 2004) (quoting *Waters v. City of Morristown*, 242 F.3d 353 (6th Cir. 2001)). Yet, Plaintiffs offer neither evidence nor analysis to demonstrate such a causal link. Neither Plaintiffs' complaint, nor their opposition brief, claims that Carey or DeWitt's actions at Scarlett's–including the alleged gun to Nicholas's head–establish a constitutional violation. But even if Plaintiffs did claim violations for the incident at Scarlett's, they offer no evidence whatsoever establishing a causal link between the absence of a policy and the putative violations. Plaintiffs only offer a naked assertion that "testimony supporting the Plaintiffs show [sic] that the verbal altercation [at Scarlett's] turned deadly when Carey, who had been drinking, whipped out his gun and put it to Nick's head. Here, the lack of a policy regulating or preventing officers from drinking and carrying firearms directly led to the escalated altercation between the parties." Pl's. Opp. at 21. This assertion does not demonstrate a causal link between the alleged drinking and the events at Scarlett's, let alone does it demonstrate that the absence of a city policy was "the moving force" behind those events. *See Anderson*, 477 U.S. at 250 (citing FED. R. CIV. P. 56(e)) (opposing party "must set forth specific facts showing that there is a genuine issue for trial."). Likewise, Plaintiffs offer no evidence to establish a causal link between the absence of a policy and the alleged drinking on the one hand, with the arrest, the use of force during the arrest, and the subsequent prosecution.

16

The Court is also not persuaded by Plaintiffs' assertion–made without citation to a case or statute–that "[u]nder Ohio law, it is illegal for any member of the public to consume alcohol or liquor while carrying a firearm." Plf's. Opp. at 20. Plaintiffs do not explain how the purported law applies to the instant matter or how it establishes a causal link. Thus, the City of Toledo's motion for summary judgment is granted.[3]

## IV. Conclusion

For the reasons stated herein, Defendants' motion for qualified immunity and summary judgment is granted in part and denied in part. Doc. 113. The motion is denied as to Plaintiffs' claims for false arrest and malicious prosecution against Carey and DeWitt, and is denied as to Plaintiffs' claim for excessive force against Carey, DeWitt, and Orwig.

The motion is granted as to all other claims and Defendants, including Plaintiffs' claims for false arrest and malicious prosecution against Defendants Wise, Mattimore, and Molnar, and Plaintiffs' claim for municipal liability against the City of Toledo.

IT IS SO ORDERED.

   s/ *David A. Katz*
DAVID A. KATZ
U. S. DISTRICT JUDGE

---

[3] The Court does not express an opinion regarding the propriety of the presence or absence of a policy governing police officers' consumption of alcohol while carrying firearms. Rather, the Court's analysis deals exclusively with Plaintiffs' inability to satisfy the above-described legal standard.

17